An unpublished order shall not be regarded as precedent and shall not be cited as legal authority. SCR 123.

IN THE SUPREME COURT OF THE STATE OF NEVADA

ARTURO RIVERA, JR.,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 65090

**FILED**

JAN 1 4 2015

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY S. Young
DEPUTY CLERK

## *ORDER OF AFFIRMANCE*

This is an appeal from a judgment of conviction, pursuant to a jury verdict, of first-degree kidnapping with the use of a deadly weapon, first-degree kidnapping, sexual assault with use of a deadly weapon, and assault with a deadly weapon. Eighth Judicial District Court, Clark County; Valorie J. Vega, Judge.

Appellant Arturo Rivera, Jr., first contends that the evidence presented at trial was insufficient to support the jury's finding of guilt. Our review of the record on appeal, however, reveals sufficient evidence to establish guilt beyond a reasonable doubt as determined by any rational trier of fact. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Origel-Candido v. State*, 114 Nev. 378, 381, 956 P.2d 1378, 1380 (1998).

FZ testified that Rivera drove up to her in a silver sedan at midday as she walked down the sidewalk, threatened her with a gun, told her to get into his car if she wanted to live, drove her to a green vacant house, parked the car against a wall so as to prevent her from opening the passenger-side door, had sexual intercourse with her against her will without using a condom, and kept the gun pointed at her throughout the course of the incident. FZ testified that the passenger-side seat was

15-01504

already reclined when she entered the car. After Rivera dropped her off, FZ testified that she walked to a police officer to report that she'd been raped, and the officer testified that she was extremely upset when she approached him. In her initial police report, FZ correctly recalled five of the six characters in Rivera's license plate. DNA evidence from FZ's sexual assault exam matched Rivera, and he conceded having had sexual intercourse with her. FZ identified Rivera as her assailant at trial and by police photo line-up.

RD testified that Rivera pulled up to her in a gray sedan as she was walking on the sidewalk in the late morning, offered her a ride, drove her to the same green vacant house, began to position the car to block the passenger-side door, became irate when RD questioned him, threatened RD by saying that he had a gun and would kill her when she asked Rivera why he was positioning the car to block her and when she then began to escape through the passenger-side front window, and grabbed her foot with one hand while reaching by the side of the seat with the other as RD escaped through the open window onto the roof of the car. RD testified that the car's antenna broke off when she fell off the car's roof as Rivera sped away. When Rivera was pulled over following a car chase with RD in a separate incident, the car lacked an antenna.

Rivera's ex-girlfriend testified that the car had an antenna when she bought it and that Rivera had use of the car during the day. Both FZ and RD testified that the photographs of that car showed the car in which they were confined against their will and that photographs of the vacant house showed the site to which they were taken.

Rivera's sole defense witness was a fellow inmate whose testimony supported a different theory of the incident with FZ. The

inmate asserted that she had been dropped off at a location different from that recorded by the patrol officer to whom FZ made her initial report and that FZ and Rivera argued regarding smoking methamphetamine, though FZ's toxicology screen as part of her sexual assault exam revealed only the presence of cocaine. The inmate reported his account of the incident nearly nine months after the incident occurred. He also testified that he was housed in the same prison unit as Rivera and that he had known Rivera for several months prior to this incident.

The jury could reasonably infer from the evidence presented that Rivera seized and abducted FZ by ordering her into his car at gunpoint, carried her away by transporting her to the vacant house, confined her by blocking her car door, did so with the purpose of committing sexual assault, subjected FZ to sexual penetration against her will, placed FZ in reasonable apprehension of immediate bodily harm, and used a firearm in the commission of these acts. *See* NRS 193.165; NRS 200.310; NRS 200.320; NRS 200.364; NRS 200.366; NRS 200.471. The jury could also reasonably infer from the evidence presented that Rivera confined RD by blocking her car door and had the purpose of committing sexual assault or a battery causing substantial bodily harm. *See* NRS 200.310; NRS 200.320. It is for the jury to determine the weight and credibility to give conflicting testimony, and the jury's verdict will not be disturbed on appeal where, as here, substantial evidence supports the verdict. *See Bolden v. State*, 97 Nev. 71, 73, 624 P.2d 20, 20 (1981); *see also McNair v. State*, 108 Nev. 53, 56, 825 P.2d 571, 573 (1992). We conclude that sufficient evidence was present for a rational trier of fact to find Rivera guilty of first-degree kidnapping with the use of a deadly

weapon, sexual assault with the use of a deadly weapon, assault with a deadly weapon, and first-degree kidnapping.

Rivera next argues that the district court erred in denying his motion to sever, which argued that the joinder of the charges relating to two different victims was improper on the grounds that there was no common scheme or plan, that the offenses were not connected together, and that unfair prejudice outweighed the probative value. The district court's decision to join counts is reviewed for an abuse of discretion. *Tabish v. State*, 119 Nev. 293, 302, 72 P.3d 584, 589-90 (2003). Misjoinder warrants reversal only if the joinder has a "substantial and injurious effect or influence in determining the jury's verdict." *Id.* at 302, 72 P.3d at 590 (internal quotation marks omitted). NRS 173.115(2) permits joinder of two or more offenses where the offenses are based on "two or more acts or transactions connected together or constituting parts of a common scheme or plan." Two crimes are "connected together" if evidence of either crime would be admissible in a separate trial for the other. *Weber v. State*, 121 Nev. 554, 573, 119 P.3d 107, 120 (2005). A "common scheme" is a "design or plan formed to accomplish some purpose," and a "plan" is a "method of design or action, procedure, or arrangement for accomplishment of a particular act or object." *Id.* at 572, 119 P.3d at 119-20 (internal quotation marks omitted).

In this case, joinder can be sustained on either ground set forth in NRS 173.115(2). First, the offenses are connected together because the evidence of each would be cross-admissible in a separate trial for the other. The separate offenses are similar enough to prove motive, intent, plan, identity, and absence of mistake or accident and therefore would have been relevant at separate trials; the separate offenses were

proven by more than clear and convincing evidence; and evidence of each would not be unfairly prejudicial in a separate trial for the other offense. *See id.* at 573, 119 P.3d at 120 (using test for admissibility of prior bad act evidence under NRS 48.045(2) to determine whether two or more offenses are cross-admissible and therefore connected together for purposes of joinder). Second, the separate transactions reflect a common scheme or plan. In particular, the evidence depicts a "[m]ethod of putting into effect an intention." *See id.* at 572, 119 P.3d at 120 (internal quotation marks omitted). Rivera would pick up a woman walking on the sidewalk during the day, drive her to a particular vacant house, park the car to block the passenger-side door and prevent her escape, and threaten violence to induce submission. Finally, the district court instructed the jury to consider each charge separately, the evidence does not show a close case, and Rivera has not otherwise shown that the joinder was unfairly prejudicial. *Id.* at 574-75, 119 P.3d at 121-22. Thus, we conclude that the district court did not abuse its discretion in denying Rivera's motion to sever on the grounds that joinder was improper.

Having considered Rivera's contentions and concluded that they are without merit, we

ORDER the judgment of conviction AFFIRMED.

_____, J.
Parraguirre

_____, J.          _____, J.
Douglas                                          Cherry

cc:    Hon. Valorie J. Vega, District Judge
       Sandra L. Stewart
       Attorney General/Carson City
       Clark County District Attorney
       Eighth District Court Clerk